UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOSE A. PANETO, and all other and
similarly situated individuals,

    Plaintiff,

vs.                                              CASE NO.: 6:06-cv-828-18-KRS

MOTOR CAR CONCEPTS II, INC., et. al.,

    Defendants.
_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Defendants, MOTOR CAR CONCEPTS II, INC. ("MCC"), HAKAN OZDEMIR, and SERHAT OZKAN (collectively, the "Individual Defendants"), by counsel and pursuant to Rule 56(a) of the Federal Rules of Civil Procedure and Local Rule 3.01, move this Court for entry of a summary final judgment as to the claims asserted by the Plaintiff, JOSE A. PANETO ("Paneto") in this action. There exists no genuine issue as to any material fact and MCC and the Individual Defendants are entitled to judgment in their favor as a matter of law. In support of this Motion for Summary Judgment, MCC and the Individual Defendants state as follows:

### I. INTRODUCTION.

MCC and the Individual Defendants, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure and Local Rule 3.01, move for summary judgment as to the Federal Labor Standards Act ("FLSA") overtime claims asserted by Paneto in his Complaint and Demand for Jury Trial (Document 1) ("Complaint") in this action. There exists no

genuine dispute as to any material factual issue.  As is more fully explained herein, MCC is exempt from the overtime requirements of the FLSA because Paneto was a "mechanic" employed by MCC and its affiliate company which together are non-manufacturing establishment primarily engaged in the business of selling . . . vehicles . . . to ultimate purchasers."  29 U.S.C. §213(b)(10)(A) (2005).

The status of Paneto as a "mechanic," and the status of MCC and its affiliate company as a "non-manufacturing establishment primarily engaged in the business of selling . . . vehicles . . . to ultimate purchasers," is not, and cannot be, disputed in this action.  As such, MCC and the Individual Defendants are entitled to entry of a summary final judgment in their favor as a matter of law.

## II.  STATEMENT OF THE CASE.

On June 19, 2006, Paneto filed his Complaint against MCC and the Individual Defendants.  Count I of the Complaint alleges violations of the overtime requirements of the FLSA and seeks overtime wages, liquidated damages, costs, and attorney's fees from MCC and the Individual Defendants.  Count II of the Complaint is a "collective action" seeking the same damages for the same alleged violations of the FLSA.

MCC and the Individual Defendants filed an Answer and Affirmative Defenses (Document 6) to the Complaint.  In their Answer and Affirmative Defenses, MCC and the Individual Defendants assert, among their defenses, that MCC is exempt from the overtime requirements of the FLSA and therefore, are not required to pay overtime compensation to Paneto and others similarly situated.

To date, the parties have exchanged preliminary discovery in accordance with this Court's July 20, 2006, Scheduling Order (Document 8). For purposes of this Motion for Summary Judgment, no other discovery is required in this action. All material facts necessary for this Court to rule on MCC's Motion for Summary Judgment are part of the record before this Court.

### III. UNDISPUTED MATERIAL FACTS.

**A.** **Paneto Worked as a "Mechanic" in the Service Department at MCC at All Times Material to the Allegations in the Complaint. [1]**

Paneto was employed by MCC as a "mechanic" at MCC's business location in Longwood, Florida (the "Longwood Dealership Location"). See Complaint ¶ 4. See also Plaintiff's Answer to Court's Interrogatory Number 4 (Document 12). Paneto began his employment in the service department at MCC on or about the week ending August 21, 2005, and ended his employment at MCC on or about the week ending January 29, 2006. See Aff., ¶ 19.[2] During the entire period of Paneto's employment in the service department, Paneto held the employment position of "mechanic." See Aff., ¶ 20. See also Complaint ¶ 4 (Document 1) and Plaintiff's Answer to Court's Interrogatory Number 4 (Document 12).

Paneto's actual job duties in the service department included: (a) inspecting and servicing used cars and trucks owned by MCC or sold by MCC to customers; (b) making

---

[1] For purposes of this Motion for Summary Judgment only, MCC and the Individual Defendants accept the factual assertions (but not the legal conclusions) asserted by Paneto in his Complaint as true.

[2] Citations to the Affidavit of Hakan ("Ken") Ozdemir in Support of Defendants' Motion for Summary Judgment filed contemporaneously with this Motion for Summary Judgment will be denoted as "Aff., ¶____."

3

repairs or adjustments to used cars and trucks to place them in salable condition; (c) using hand tools, portable power tools, and specification sheets in connection with performing work on used cars and trucks; (d) inspecting cars and trucks for obvious damage and missing components; (e) inspecting cars and trucks for loose, defective or misaligned items, such as trim, doors, and hardware, and positioning said items according to specifications; (f) testing steering, brakes, transmission, and engine operation of used cars and trucks; (g) testing power equipment, such as electric windows, seats, radio, horn, lights, and directional signals to ensure proper operation; (h) inspecting surfaces of used cars and trucks to detect chips and scratches in paint and touching up imperfections; (i) installing optional equipment specified by MCC or MCC customers, such as outside mirrors, rugs, and seat covers; installing standard components, such as hubcaps and wiper blades; and (j) installing or repairing major mechanical, hydraulic, or electromechanical equipment. See Aff., ¶ 16.

### B.  MCC is a Non-Manufacturing Retail Establishment that Sells Used Cars and Trucks.

MCC is, and always has been, a "non-manufacturing establishment" engaged in the retail sale of used cars and trucks. See Aff., ¶ 12. MCC has seven (7) locations in Central Florida, the largest of which is the Longwood Dealership Location. See Aff., ¶ 3 and 5.

The Longwood Dealership Location looks and operates as a typical retail car and truck dealership. See Aff., ¶ 6. The Longwood Dealership Location consists of (a) a large parking lot that is continuously filled with used cars and trucks offered for sale to the general public and (b) a large building containing a showroom, offices, a parts

department, and a service department.  See Aff., ¶ 6.  Prior to MCC owning the Longwood Dealership Location, the location was an Acura new car dealership.  See Aff., ¶ 6.

MCC's Longwood Dealership Location includes a working service department employing between six (6) to nine (9) mechanics at any given time period.  See Aff., ¶ 9.  MCC's service department is located within the same building as the MCC showroom.

The mechanics employed in the service department only perform work on vehicles owned by MCC or sold by MCC to MCC's customers.  See Aff., ¶ 8.  The MCC service department is not open to the public, does not market its services to the public, and does not service vehicles which are not owned by MCC or sold by MCC.  See Aff., ¶ 17.  In short, the service department is operated exclusively for the benefit of MCC and in furtherance of MCC's retail business operations.  See Aff., ¶ 10.

Advance Auto Service, Inc., operates MCC's service department.  See Aff., ¶ 10.  Although Advance Auto Service, Inc., is a separate corporate entity from MCC, it operates the service department solely for the benefit of MCC, and virtually all income of Advance Auto Service, Inc., is derived from MCC.  See Aff, ¶ 14.  Other than the name, "Advanced Auto Services," stitched on the shirts worn by the mechanics, no other signage or other advertising bearing Advanced Auto Services, Inc.'s name can be found at the Longwood Dealership Location.  See Aff., ¶ 17.  Advance Auto Services, Inc., is separate from MCC for accounting purposes only.  See Aff., ¶ 18.  In all other respects, MCC and Advance Auto Service, Inc., are functionally one integrated establishment.

## IV. ARGUMENT.

A. **Standard for Summary Judgment.**

Summary Judgment "is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' Fed.R.Civ.P. 56(c). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment." Teblum v. Eckerd Corp. of Fla., Inc., Slip Copy, 2006 WL 288932 (M.D. Fla. Feb. 7, 2006), quoting, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Moreover, an issue is only genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id., citing, Mize v. Jefferson City Bd. Of Educ., 93 F.3d 739, 742 (11th Cir. 1996). Further, a fact is only material "if it may affect the outcome of the suit under the governing law." Id., citing, Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). See also, Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Therefore, "a mere 'scintilla' of evidence in favor of the non-moving party, or evidence that is 'merely colorable' or 'not significantly probative,' is not enough" to defeat the summary judgment motion. Rossi v. Assoc. Limousine Svcs., Inc., 438 F.Supp. 2d 1354, 1359 (S.D. Fla. 2006), quoting, Anderson, 477 U.S. at 252, 106 S.Ct. 2505.

**B.     Burden of Proof.**

In order to prevail on a claim for payment of overtime compensation, Paneto must prove by a preponderance of the evidence "that he performed work for which he was improperly compensated." Rossi, 438 F.Supp.2d at 1365. Where, as in this action, MCC and the Individual Defendants have asserted that an exemption from the requirement of overtime compensation is applicable, MCC and the Individual Defendants have the "burden of showing that [they are] entitled to the exemption by a preponderance of the evidence." Id., at 1359, see also, Teblum, Slip Copy, 2006 WL 288932, *4, quoting, Davis v. Friendly Express, Inc., 2003 WL 21488682, at n.4 ("Generally, a FLSA Plaintiff carries the burden of proving all elements of a FLSA claim. When, however, an employer relies on an exemption from a FLSA requirement, the employer generally bears the burden of showing that the exemption applies."). Whether Paneto's employment "falls within the scope of an FLSA exemption, while based on the underlying facts, is ultimately a legal question." Id. (emphasis added). See also Viart v. Ball Motors, Inc., 149 F.Supp.2d 1346, 1349 (S.D. Fla. 2001).

**C.     MCC and the Individual Defendants are Entitled to Summary Final Judgment Because Paneto's Employment Falls Within the Scope of an FLSA Overtime Exemption.**

Applying the standard for summary judgment to the claims raised by Paneto in this action, as a matter of law, Paneto cannot prevail on his overtime claim because his employment falls within a recognized exemption of the FLSA. As is more fully explained below, Paneto's employment falls within the FLSA exemption set forth in 29 U.S.C. §213(b)(10) and 29 C.F.R. §779.372 relating to mechanics employed at non-

manufacturing retail establishments primarily engaged in the sale of vehicles to ultimate purchasers.

### 1. Paneto's Employment as a "Mechanic" Falls Within the Overtime Exemption Set Forth in 29 U.S.C. §213(b)(10)(A).

Under the FLSA, persons employed as "mechanics who are primarily engaged in . . . servicing automobiles [and] trucks, and who are "employed by a non-manufacturing establishment primarily engaged in the business of selling such vehicles to ultimate purchasers" are exempt from being entitled to receive overtime compensation. 29 U.S.C. §213(b)(10)(A). Thus, if Paneto falls under the statutory definition of "mechanic" under Section 213(b)(10)(A) and MCC is a "non-manufacturing establishment" covered under Section 213(b)(10)(A), then Paneto is exempt from any entitlement to overtime compensation.

The relevant regulation promulgated by the Secretary of the Department of Labor provides the following definition of a "mechanics:"

> "A mechanic is any employee primarily engaged in doing mechanical work (such as get ready mechanics, automotive, truck, farm implement, or aircraft mechanics, used car reconditioning mechanics, and wrecker mechanics) in the servicing of an automobile, trailer, truck, farm implement, or aircraft for its use and operation as such. This includes mechanical work required for safe operation, as a vehicle, farm implement, or aircraft."

29 C.F.R. §779.372(c)(3) (2005).

Whether Paneto was a "mechanic" engaged in the servicing of used cars and trucks cannot genuinely be in dispute in this action. First, Paneto's own Complaint states that he was a "mechanic" who serviced and repaired automobiles and trucks. See Complaint, ¶¶4 and 5. Second, Paneto confirmed under oath that his "title or position" at MCC was "Mechanic." See Plaintiff's Answer to Court's Interrogatory Number 4 (Document 12). Third, as the Affidavit of Mr. Ozdemir evidences, the work Paneto actually performed in MCC's service department was the work of a "mechanic." See Aff., ¶ 20.

This Court can properly find that Paneto was a "mechanic" within the scope of the FLSA overtime exemption at this stage of this action. The question is a "legal question" that may be determined by summary judgment. See, Rossi, 438 F.Supp.2d at 1359, see also, Viart, 149 F.Supp.2d at 1349 (determination of whether a given employee falls within the scope of FLSA exemption, while based on the underlying facts, is ultimately a legal question). Based upon the record before this Court, it cannot be disputed that Paneto was a "mechanic" within the scope of the FLSA overtime exemption.

**2.   MCC and Advance Auto Service, Inc., Are a Single "Non-Manufacturing Establishment" Primarily Engaged in the Sale of Used Cars and Trucks to the Ultimate Purchasers.**

If this Court finds that Paneto is a "mechanic" within the scope of the FLSA overtime exemption, this Court should, and can, then determine whether MCC's retail used car and truck establishment is "a non-manufacturing establishment primarily engaged in the business of selling such vehicles to ultimate purchasers." 29 U.S.C.

§213(b)(10)(A). As explained more fully below, MCC is such an establishment within the scope of the FLSA overtime exemption.

"Automobile dealer establishments," and "automobile repair shops" have both been specifically listed in the regulations promulgated by the Secretary of the Department of Labor as non-manufacturing retail establishments. See, 29 C.F.R. 779.320. It is beyond dispute that MCC is a used car and truck dealership and that MCC, through its affiliated company, operates a service department. Further, it is beyond dispute that neither MCC nor Advance Auto Service, Inc., manufacture cars or trucks or any other products. See Aff., ¶ 12.

Instead, MCC runs a used car and truck dealership, and is primarily engaged in selling used cars and trucks to ultimate purchasers. The service department, which is operated solely for the benefit of MCC, is ancillary to the business of selling used cars and trucks. See Aff., ¶ 14. In fact, approximately ninety-nine plus percent (99+%) of the annual dollar volume of income of MCC and Advance Auto Service, Inc., is from sales of used cars and trucks. See e.g., Mitchell v. T.F. Taylor Fertilizer Works, Inc., 23 F.2d 284 (5th Cir. 1956). Thus, MCC is a "non-manufacturing retail establishment" within the scope of the FLSA and is exempt from the requirement of paying overtime to Paneto and other similarly situated mechanics employed by MCC and Advance Auto Services, Inc.

Paneto may attempt to argue that the exemption set forth in 29 U.S.C. §213(b)(10)(A) is inapplicable to MCC, claiming that MCC and Advance Auto Service, Inc., are two (2) separate establishments, one of which (Advance Auto Service, Inc.) is not a non-manufacturing retail establishment. However, such an argument must fail

because the argument fails to recognize that both an automobile dealer establishment (i.e., MCC) and an automobile repair shop (i.e., Advance Auto Service, Inc.) are both listed by the Secretary of the Department of Labor as "non-manufacturing establishments." See, 29 C.F.R. 779.320.

More importantly, the courts have already conclusively determined that the presence of two (2) separate corporations <u>does not</u> automatically negate the existence of a single establishment for purposes of the FLSA overtime exemption. <u>See</u>, <u>Marshall v. New Hampshire Jockey Club, Inc.</u>, 562 F.2d 1323, 1330 (1st Cir. 1977) ("[T]he Secretary of Labor's regulations and the case law indicate that ownership and control are not dispositive in determining whether or not an 'establishment' is single or multiple."). <u>See also</u>, 29 U.S.C. §203(r)(1) (A single "enterprise" has been defined by the FLSA as "related activities performed (either through unified operations or common control) by any person or persons for a common business purpose, and includes all activities whether performed in one or more establishments . . . .").

Rather than rely on issues of ownership or control, the Fifth Circuit Court of Appeals has recognized that "'Congress used the word 'establishment' as it is normally used in business and in government -- as meaning a distinct physical place of business.'" <u>Marshall v. Sundial Assoc.</u>, 588 F.2d 120, 122 (5th Cir. 1979), <u>quoting</u>, <u>A.H. Phillips, Inc. v. Walling</u>, 324 U.S. 490, 496, 65 S.Ct. 807, 810, 89 L.Ed. 1095, 1100 (1945). Moreover, the First Circuit has reasoned that the proper focus for determining the existence of a single establishment is "the integrity of the economic, physical and

functional separation between the business units," instead of focusing on the two (2) corporate identities. New Hampshire Jockey Club, Inc., 562 F.2d at 1330.

In Acme Car & Truck Rentals v. Hooper, 331 F.2d 442 (5th Cir 1964), the Fifth Circuit established criteria for determining whether two (2) separate corporations can comprise a single establishment. The Fifth Circuit determined that "one major criteria" is whether "there is a distinct physical place of business." Id. at 444. A second criteria is whether there is "functional unity" among the two (2) separate corporations. Id. at 445. In other words, functionally, are the two (2) corporations operating "as one entity, the sole distinctions between them being their separate corporate existences." Id. In New Hampshire Jockey Club, a third criteria for determining whether two (2) corporations can comprise a single establishment was recognized by the First Circuit. Specifically, the First Circuit recognized that courts should consider whether there exists economic interdependence between the two (2) corporations. Id. at 1332.

When applying the above criteria to the undisputed facts in the instant action, it is indisputable that MCC and its affiliate corporation, Advance Auto Service, Inc., together are a single, non-manufacturing retail establishment for purposes of the FLSA overtime exemption. First, there exists a single "distinct physical place of business" for MCC and Advance Auto Services, Inc. See Acme Car & Truck Rentals, 331 F.2d at 444. As is set forth in the Affidavit of Mr. Ozdemir, MCC and Advance Auto Service, Inc., occupy the same building at the same location in Longwood, Florida. See Aff ¶ 15.

Second, there is "functional unity" among MCC and Advance Auto Service, Inc. See Acme Car & Truck Rentals, 331 F.2d at 445. As evidenced by the Affidavit of Mr.

Ozdemir, MCC and Advance Auto Service, Inc., are operated as one entity to further a single business purpose and do not have functional goals independent from the other. See generally Aff.

Third, MCC and Advance Auto Service, Inc., are economically interdependent. See New Hampshire Jockey Club, 562 F.2d at 1332. Advance Auto Service, Inc., cannot exist without MCC. As the Affidavit of Mr. Ozdemir evidences, MCC financially supports Advance Auto Service, Inc., and Advance Auto Service, Inc., only services and repairs used cars and trucks owned by MCC or sold by MCC to MCC's customers. See Aff., ¶ 8. Indeed, the services and repairs performed by Advance Auto Service, Inc., are simply part of the dealer services MCC provides to its customers. See Aff., ¶ 14. Advance Auto Service, Inc., does not have its own sales force, does not accept work from the general public, does not perform services for other automobile dealers, and does not market or advertise its services. See Aff., ¶ 17.

This Court can properly find that MCC and its affiliated company together are a single, non-manufacturing retail establishment for purposes of the FLSA overtime exemption at this stage of this action. As with the question of whether Paneto is a "mechanic," the question of whether a single, non-manufacturing retail establishment exists in this action is a "legal question" that is properly determined by summary judgment. See, Acme Car & Truck Rentals, 331 F.2d at 444, citing, Boisseau v. Mitchell, 218 F.2d 734 (5th Cir. 1955). Based upon the record before this Court, it cannot be disputed that MCC, together with Advance Auto Service, Inc., is a single, non-manufacturing retail establishment within the scope of the FLSA overtime exemption.

## V. CONCLUSION.

Because Paneto is a "mechanic" within the scope of 29 U.S.C. §213(b)(10)(A), and because MCC is a "non-manufacturing establishment primarily engaged in the business of selling . . . vehicles to ultimate purchasers" within the scope of 29 U.S.C. §213(b)(10)(A), no overtime compensation is due to Paneto. Therefore, MCC and the Individual Defendants are entitled to summary final judgment in this action.

WHEREFORE, Defendants, MOTOR CAR CONCEPTS II, INC., ADVANCE AUTO SERVICE, INC., HAKAN OZDEMIR, and SERHAT OZKAN, respectfully request that this Honorable Court grant their Motion for Summary Judgment, and enter a Summary Final Judgment dismissing Paneto's Claims, awarding Defendants their attorneys' fees and costs, and awarding such other relief as the Court deems just and proper.

Dated: October 30, 2006

STOVASH, CASE & TINGLEY, P.A.

By     */s/ Robert J. Stovash*
Robert J. Stovash, Esquire
Florida Bar No. 0769320
rstovash@sctlaw.com
Robert L. Case, Esquire
Florida Bar No. 0152129
rcase@sctlaw.com
J. Scott Hudson, Esquire
Florida Bar No. 0725137
scott@hudsonhrlaw.com
SunTrust Center
200 S. Orange Avenue, Suite 1220
Orlando, Florida 32801
Telephone: (407) 316-0393
Facsimile: (407) 316-8969
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 30, 2006, I electronically filed the foregoing Defendants' Motion for Summary Judgment and Incorporated Memorandum of Law with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to K.E. Pantas, Esquire, counsel for Plaintiff.

/s/ *Robert J. Stovash*
Robert J. Stovash, Esq.